UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  06-80608-CIV-MARRA/JOHNSON

JOANNA GILLETT CARRAN,
an individual,

      Plaintiff,

vs.

MICHAEL MORGAN, an individual,
and MICHAEL MORGAN d/b/a
ANGLO OFFSHORE RESOURCES,
and MERRILL LYNCH, PIERCE, FENNER
AND SMITH INC., a New York Corporation,

      Defendants.
_____/

**OPINION AND ORDER**

      This cause is before the Court upon Defendant Michael Morgan's Motion to Dismiss Plaintiff's First Amended Complaint, Dissolve Lis Pendens and Award Attorney's Fees [DE 1] and Defendant Michael Morgan's Request for Expedited Hearing to Discharge Lis Pendens [DE 9].  The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

      On June 21, 2006, Defendant Merrill Lynch, Fenner and Smith, Inc. ("Merrill Lynch") removed the instant action from the Circuit Court of the 15th Judicial Circuit of Florida [DE 1]. Prior to removal, Defendant Michael Morgan ("Defendant" "Morgan") moved to dismiss Plaintiff Joanna Gillett Carran's ("Plaintiff" "Carran") First Amended Complaint.  That four-count Amended Complaint alleges a violation of 10b-5 of the Securities Exchange Act of 1934

(Count I) against Morgan, individually and d/b/a Anglo Offshore Resources, and Merrill Lynch; a violation of Florida Statute § 517.12 (Count II) against Morgan, individually and d/b/a Anglo Offshore Resources, and Merrill Lynch; a Breach of Fiduciary Duty, Establishment of Constructive Trust and Issuance of Lis Pendens (Count III) against Morgan, individually, and a violation of Florida Statute § 517.301 (Count IV) against Morgan, individually and d/b/a Anglo Offshore Resources.

The Amended Complaint states that Morgan and Carran are both residents of Palm Beach County. (Am. Compl. ¶¶ 2-3.) Anglo Offshore Resources is a fictitious entity operated by Morgan and was used as an instrumentality in conducting business with Carran. (Am. Compl. ¶ 4.) Merrill Lynch is a New York corporation licensed to do business throughout the state of Florida and has numerous retail offices within Palm Beach County. (Am. Compl. ¶ 5.) According to the Amended Complaint, all transactions and occurrences between Carran and Morgan took place in Palm Beach County. (Am. Compl. ¶ 6.) Carran became acquainted with Morgan in the Bahamas in June or July of 2000. (Am. Compl. ¶ 7.) Morgan held himself out as an expert investment advisor and agreed to invest Carran's money, her divorce settlement of approximately 1.4 million dollars, in safe investments with the primary goal of gaining income and preserving capitol. (Am. Compl. ¶¶ 8-9.) Morgan promised Carran that his recommendations were safe, had high liquidity and did not require additional fees or charges. (Am. Compl. ¶ 10.)

The initial investments were made on or about July 17, 2001. (Am. Compl. ¶ 11.) Morgan provided Carran with investment advice while in the Bahamas, but the actual investment took place at either Merrill Lynch or Barclays Bank in New York, New York. (Am. Compl. ¶

11.)  After December of 2001, Morgan gave Carran advice in Florida and Carran experienced the injury of Morgan's acts after she had moved from the Bahamas to Florida.[1]  (Am. Compl. ¶ 11.)

Morgan was not registered with the National Association of Securities Dealers ("NASD"), the state of Florida or any other exchange that would have permitted him to give investment advice or sell securities within the United States. (Am. Compl. ¶ 12.)  Morgan never provided a prospectus to Carran and the investments provided by Morgan either did not exist or were highly speculative in nature.  (Am. Compl. ¶¶ 13-14.)  At Morgan's directive, Carran sent checks to various banks and deposited large sums of money into various accounts of which Morgan had total control. (Am. Compl. ¶ 19.)  The Amended Complaint alleges that Morgan induced Carran to engage in fifteen separate transactions, from November 12, 2000 through July 24, 2004, which promised a high rate of return and safety of principle. (Am. Compl. ¶ 20(a)-(o).) Carran wired money to various funds recommended by Morgan or hand-delivered checks to Morgan. (Am. Compl. ¶ 20(a)-(o).)  While maintaining effective control of Carran's funds through 2006, Morgan converted Carran's money for his own use, including the purchasing of a personal residence. (Am. Compl. ¶ 21.)

In support of his motion, Morgan moves to dismiss the Amended Complaint based on (1) Carran's lack of standing (Def. Mot. 3-4); (2) lack of personal jurisdiction over Morgan (Def. Mot. 4-5); (3) lack of service of process and insufficient process on Morgan d/b/a Anglo Offshore Resources (Def. Mot. 5); (4) lack of subject matter jurisdiction (Def. Mot. 6); (5) failure to state a claim of fraud with the required particularity (Def. Mot. 7-9); (6) failure to state a claim

---

[1] Carran moved to Coral Springs, Florida in December of 2001 and then moved to Palm Beach County in October of 2002. (Am. Compl. ¶¶ 16-18.)

under the Securities and Exchange Act (Def. Mot. 9-14); (7) Economic Loss Rule (Def. Mot. 14-18); (8) failure by Carran to plead ownership over securities as required under Florida Statute § 517.12 (Def. Mot. 19-20) and (9) failure to allege properly an intent to charge a particular property with respect to the lis pendens (Def. Mot. 20-24). [2]

## II. Discussion

### A. Lack of Standing

The Court begins its analysis by addressing Morgan's argument that the Amended Complaint should be dismissed due to Carran's lack of standing. Morgan complains that the Amended Complaint does not state that the checks delivered by Carran to Morgan, and payable to third-party entities, were drawn from Carran's personal bank accounts. (Def. Mot. 3.) The Court rejects this argument in its entirety. The Amended Complaint adequately alleges that Morgan agreed to invest Carran's money (Am. Compl. ¶ 9), that Morgan continued to provide Carran with investment advice and manage her money (Am. Compl. ¶ 18), that Morgan maintained effective control of Carran's funds and converted her money (Am. Compl. ¶ 21), and that Morgan purchased a house using funds obtained from Carran's accounts (Am. Compl. ¶ 22). These allegations, along with the allegations concerning specific transactions that Morgan induced Carran to enter into (Am. Compl. ¶ 20), are sufficient to allege standing.

### B. Lack of Personal Jurisdiction

Morgan argues that this Court does not have personal jurisdiction over him for the following reasons: (1) Carran and Morgan were residents of Bahamas at the time of the

---

[2] Morgan initially filed the instant motion in state court. To the extent that Morgan's arguments can be applied in federal court, the Court will address them.

investment agreement; (2) Carran wired money to foreign off-shore entities; (3) Morgan does not do business as Anglo Offshore Resources and (4) Anglo Offshore Resources is a Bahamas corporation.  (Def. Mot. 5-6.)   Although Morgan requests a hearing on this issue, a review of the record demonstrates one is unnecessary.  The Court notes that Morgan does not contest that he resides in Florida, as alleged in the Amended Complaint, or that he was served in Florida, as evidenced by the return of service filed of record.  Based on his Florida residency, he is subject to general jurisdiction in the state of Florida.  Burnham v. Superior Court of California, 495 U.S. 604, 619 (1990) (jurisdiction over the person based upon physical presence in the forum jurisdiction at the time of service of process satisfies the due process standard of fair play and substantial justice); Milliken v. Meyer, 311 U.S. 457, 462-63 (1940) (domicile in the state alone is sufficient to bring a defendant within the reach of the state's jurisdiction for purposes of personal judgment); Davis v. State, 928 So. 2d 442, 448 (Fla. Dist. Ct. App. 2006) (courts have personal jurisdiction over residents of Florida when reached by a summons). Since Morgan is subject to general jurisdiction in Florida, it is unnecessary to examine Morgan's argument relating to the connexity between the cause of action and his activities in Florida. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). Accordingly, Morgan's motion to dismiss for lack of personal jurisdiction is denied.

    C.  Insufficient Process and Insufficient Service of Process

A sworn return of service filed in this case attests that Defendant Morgan was personally served with process.  Defendant claims that Morgan, d/b/a as Anglo Offshore Resources, was not properly served, but Morgan provides no evidence in support of this motion and instead simply

5

asserts that "appropriate process was not observed." (Def. Mot. 5.) Plaintiff asserts that Morgan, d/b/a Anglo Offshore Resources, was served and a return of process filed with the Clerk of the Circuit Court of Palm Beach County, Florida. That return of service is not filed of record in this case. Defendant's blanket assertion without evidentiary support does not provide an adequate basis for dismissal of the Amended Complaint against Morgan, especially in view of the proof of service against him personally. Mobern Electric Corp. v. Walsh, 197 F.R.D. 196, 198 (D.D.C. 2000) (a bare allegation by a defendant that he was improperly served cannot be allowed to belie the process server's return); accord People of the State of New York v. Operation Rescue National, 69 F. Supp. 2d 408, 416 (W.D.N.Y. 1999); see Old Republic Ins. Co. v. Pacific Financial Svcs. of Am., Inc., 301 F.3d 54, 58 (2d Cir. 2002) (where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavit, no hearing is required). Since neither party has supported their position with evidence, Defendant's motion to dismiss Defendant Morgan, d/b/a Anglo Offshore Resources, is denied without prejudice. Since Defendant Morgan individually has failed to rebut the affidavit of service of record, Defendant Morgan's motion to dismiss him individually for insufficient service of process is denied.

    D. Lack of Subject Matter Jurisdiction

    Morgan claims that there is no subject matter jurisdiction over a dispute between two residents of the Bahamas. This action concerns a matter of exclusive federal jurisdiction; namely, a claim brought pursuant to Section 10b-5 of the Securities and Exchange Act of 1934.[3] See 15 U.S.C. § 78aa. With respect to the remaining state law claims, this Court may exercise

---

[3] Morgan concedes that the Court has exclusive jurisdiction over this claim. (Def. Mot. 14.)

supplemental jurisdiction. Accordingly, this Court possesses subject matter jurisdiction and Morgan's motion to dismiss for lack of subject matter jurisdiction is denied.

### E.  Failure to State a Claim of Fraud with the Required Particularity

Morgan moves to dismiss "all fraud claims" for failure to plead these claims with specificity. (Def. Mot. 9.)  After careful review of the First Amended Complaint, the Court finds that it adequately places Morgan on notice of the claim alleging fraud against him.

Rule 9(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged  and protecting defendants against spurious charges of immoral and fraudulent behavior." Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1370-71 (11th Cir. 1997) quoting Durham v. Business Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted). That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading.  See Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).  This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendants' gain due to the alleged fraud.  See id. quoting Brooks, 116 F.3d at 1371.

Here, the Amended Complaint alleges that Morgan made the following misstatements or omissions: (1) Morgan represented himself as an expert investment advisor; (2) Morgan did not inform Carran that he was not registered to give investment advice or sell securities; (3) Morgan

failed to give Carran a prospectus with respect to the recommended mutual funds; (4) Morgan promised a high rate of return, safety of principle, high liquidity and no additional fees or charges and (5) Morgan used Anglo Offshore Resources, a fictitious entity, to conduct business with Carran.  (Am. Compl. ¶¶ 4, 9-10, 12, 13, 20.)   The Amended Complaint also alleged the time and place of these statements; namely, that Morgan's investment advice was initially given in the Bahamas and, after December of 2001 and through 2005, Morgan gave Carran investment advice in Florida. (Am. Compl. ¶ 11.)  Furthermore, these statements and omissions induced Carran to give Morgan money for the purpose of investing, which Morgan allegedly converted and used for his own gain.  (Am. Compl. ¶¶ 20-23.)

Accordingly, Morgan's motion to dismiss for failure to allege fraud with specificity is denied.

F.  Failure to State a Claim under the Securities and Exchange Act

Morgan asserts that Carran has failed to allege properly each element of the claim brought pursuant to Rule 10b-5, as amended by the Private Securities Litigation Reform Act ("PSLRA").  After careful review, the Court denies Morgan's motion to dismiss on this basis.

To maintain a Rule 10b-5 fraud action a plaintiff must establish: (1) a false statement or omission of material fact; (2) made with scienter; (3) upon which the plaintiff justifiably relied, and (4) that proximately caused the plaintiff's injury.  Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997).  Here, the Amended Complaint alleges that, although Morgan held himself out as an expert investment advisor who could invest Carran's money in "safe investments" devoid of fees and charges, the investment opportunities Morgan recommended to Carran either "did not exist" or  "were highly speculative in nature."  (Am. Compl. ¶¶ 4, 9, 14.)

These facts adequately allege false statements and/or omission of material facts.

Likewise, the Amended Complaint demonstrates that Morgan's statements and/or omissions were made with scienter. That element requires a showing that Morgan acted with severe recklessness. Bryant v. Avado Brands, 187 F.3d 1271, 1285 (11th Cir. 1999). The Eleventh Circuit has defined "severe recklessness" as follows:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir. 1989) quoting Broad v. Rockwell International Corp., 642 F.2d 929, 961 (5th Cir. 1981) (en banc).[4]

The Amended Complaint states that Morgan engaged in illegal and unlicensed securities practice. (Am. Compl. ¶¶ 12, 32-33, 40-43.) Furthermore, Morgan's investment recommendations to Carran were either "highly speculative" or "did not exist." (Am. Compl. ¶¶ 29, 46.) Lastly, Morgan converted Carran's investment money for his own personal use. (Am. Compl. ¶¶ 46-47.) Clearly, then, the allegations demonstrate that Morgan, in making these misrepresentations and omissions, acted with severe recklessness.[5]

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[5] Morgan claims the Amended Complaint is conclusory, lacks a basis for a finding of scienter, fails to show Morgan made misstatements or had knowledge of the falsity of these misstatements. (Def. Mot. 11.) The Court disagrees with this characterization. Morgan would have the Court believe that the Amended Complaint simply alleged that Morgan provided Carran with bad investment advice and made no false statements. (Def. Mot. 13.) To the contrary, the

With respect to the element of justifiable reliance, the Court finds that the Amended Complaint properly pleads that Carran relied on Morgan's investment advice. (Am. Compl. ¶ 31.) As to the question of whether this reliance was justifiable, the Court concludes that such a determination requires a factual inquiry to be determined at a later stage in this litigation.[6] Finally, the Amended Complaint states that Morgan provided Carran with investment advice from July of 2001 through 2005. (Am. Compl. ¶ 11.) Based on that advice, Carran continued to give money to Morgan to invest on her behalf, which he then converted for his personal use. (Am. Compl. ¶ 20-21.) These allegations illustrate that Morgan's misstatements and omissions proximately caused Carran's financial loss. Although Morgan quibbles with the failure of the Amended Complaint to state the exact amount of loss, the Amended Complaint clearly states that Carran sought to invest her 1.4 million dollar divorce settlement and that Carran suffered a "substantial financial loss." (Am. Compl. ¶¶ 8, 31.)

Accordingly, Morgan's motion to dismiss for failure to state a claim is denied.[7]

---

allegations suggest that Morgan knowingly held himself out to be a licensed investment advisor who sought to convert Carran's money for his personal use. Likewise, Morgan's claim that causation does not exist because "no allegation in the [amended] complaint [is] sufficient to connect the allegedly fraudulent statement to causing any actual loss"(Def. Mot. 14) is equally specious. Indeed, the Amended Complaint states that Morgan used a "fictitious entity" to conduct business with Gillet and advised Carran to invest in that entity. (Am. Compl. ¶¶ 4, 20(a)-(b), (d)-(e).)

[6] Morgan urges the Court to find, at this early stage of the proceedings, that Carran's reliance on Morgan's statements was not reasonable (Def. Mot. 12.). The Court rejects this application, however, Morgan may renew this argument at the summary judgment or directed verdict stages of the case.

[7] Morgan also argues that the solicitation and sale of investments for Carran was not made through the use or the means and instrumentalities of interstate commerce. According to Morgan, the transactions occurred face to face, hand to hand or through the use of intra-state commerce. (Def. Mot. 11-12.) Under the Securities and Exchange Act, interstate commerce is

G.  Economic Loss Rule

Morgan argues that Gillet's breach of fiduciary duty, constructive trust and fraud/conversion claims arise from a breach of contract claim and are therefore barred under the Florida economic loss rule (Def. Mot. 14.)

Under the economic loss rule, a plaintiff may not bring a tort claim to recover economic damages arising from a breach of contract, unless there are personal injury or property damages. See Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994).  However, tort claims that are committed independent of a breach of contract and which require proof of facts separate from a breach of contract action are not barred under the economic loss rule.  See HTP, Ltd. v. Lineas Areas Costarricenses, S.A., 685 So. 2d 1238 (Fla. 1996).  Furthermore, intentional tort claims such as fraud and conversion are not barred by the economic loss rule.  See Indemnity Ins. Co. of N. Am. v. American Aviation, Inc., 891 So. 2d 532, 543 n.3 (Fla. 2004); Duncan v. Kasim, Inc., 810 So. 2d 968, 971 (Fla. Dist. Ct. App. 2002);  Pershing Indus., Inc. v. Estate of Victoria Sanz, 740 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 1999); Alex Hofrichter, P.A. v. Zuckerman & Vendetti, P.A., et al., 710 So. 2d 127, 129 (Fla. Dist. Ct. App., 1998).  Nor does the economic loss rule apply when the

---

broadly construed. See e.g., 15 U.S.C. § 78c(a)(17) (the term interstate commerce includes intrastate use of a telephone, interstate means of communication or any other interstate instrumentality); 3B Fed. Jury Prac. & Instr. § 162.285 (5th ed. 2006) citing Aquionics Acceptance Corp. v. Kollar, 503 F.2d 1225, 1228 (6th Cir.1974) (jury instruction that if particular method of communication or transportation was employed to effect a purely local transaction wholly within boundaries of state then the instrumentality was not one of interstate commerce was reversible error as Congress may regulate intrastate activities having an appreciable effect on interstate commerce).  Indeed, intrastate mailings or telephone calls satisfy the jurisdictional requirements.  See Dupuy v. Dupuy, 511 F.2d 641, 642-43 (5th Cir. 1975). Thus, Morgan's contention that the jurisdictional interstate commerce requirement is not met is easily dismissed.

parties are not in contractual privity.  Indemnity Ins. Co., 891 So. 2d at 536; Biscayne Inv. Group, Ltd. v. Guarantee Management Svcs., Inc., 903 So. 2d 251 (Fla. Dist. Ct. App. 2005).

Significantly, Carran does not allege that Morgan breached an agreement or contract.  In fact, Carran does not allege that the parties entered into any agreement or that Carran and Morgan were in contractual privity.  Moreover, Carran's intentional tort claims are not barred by the economic loss rule.  Thus, the economic rule is inapplicable and dismissal of Carran's breach of fiduciary duty, constructive trust and fraud/conversion claims on that basis is unwarranted.

H.  Failure to Plead Ownership over the Securities as required under Florida Statute § 517.12

Morgan seeks dismissal of Count II of the Amended Complaint that alleges a violation of Florida Statute § 517.12.  (Def. Mot. 18.)  Section 517.12 provides in relevant part:

> No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section. The office shall not register any person as an associated person of a dealer unless the dealer with which the applicant seeks registration is lawfully registered with the office pursuant to this chapter.

Fla. Stat. § 517.12(1).

Morgan faults Carran for failing to allege "whether or not she still owns the investments" "since [the] remedy sought [ ] is rescission of the transaction." (Def. Mot. 18.)  According to Morgan,  if Carran seeks to rescind the contract, she must "renounce[] the contract and her ownership of the property obtained thereunder" or waive her right to rescind if she has retained the benefit of the contract. (Def. Mot. 19-20.)  In response, Carran points out that she has pled remedies in the alternative and awaits further discovery to determine whether she is entitled to rescission or damages. (Pl. Resp. 12-13.)

Morgan's argument appears to rely on the doctrine of election remedies, "a technical rule of procedure" which may be used by courts to prevent "double recoveries for a single wrong." Liddle v. A.F. Dozer, Inc., 777 So. 2d 421, 422 (Fla. Dist. Ct. App. 2000). In analyzing this doctrine, the Liddle Court stated in part:

> Application of the doctrine can serve as an instrument of injustice when an election of a remedy turns out to be unavailable, and yet it is held to bar pursuit of another remedy. Prior to imposing the doctrine, courts should carefully consider the facts of each case. If the two remedies are inconsistent or mutually exclusive, so that one implies negation of the underlying facts necessary for the other, then the mere choice of one remedy and, certainly, the pursuit of one remedy to judgment, operates as an election. However, if the remedies are concurrent or cumulative, and logically can coexist on the same facts, the doctrine of election does not apply until the injured party has received full satisfaction for his [or her] injuries. Or, if the remedies address different and distinct rights or redress different wrongs, the doctrine of election has no application. *An election between mutually exclusive remedies can be made at any time prior to the entry of judgment*.

Id. (emphasis added.)

Here, Carran has properly pled two alternative remedies. At this early stage of the proceeding, Carran does not yet know if she still owns the securities purchased by Morgan on her behalf. (Pl. Resp. 13.) As such, Carran does not wish to waive her right to elect the remedy of rescission. (Pl. Resp. 12-13.) That stated, the Court notes that, at a later stage in the proceeding, Morgan may renew this argument and Carran may need to elect between these two "mutually exclusive remedies." Liddle, 777 So. 2d at 422.

Furthermore, to the extent Morgan complains that Carran failed to plead that she owns the securities at issue, proof of current ownership is only necessary when rescission is being sought. Florida Statute section 517.211(2). This element is a matter of proof which need not be specifically pled, especially in light of the election of remedies which Plaintiff need not make at this time. With respect to Morgan's contention that the Amended Complaint does not state that Morgan conducted

13

a sale within the state of Florida, the Court agrees that such an allegation is lacking. The only allegation of the location of an investment is in New York. (Am. Compl. ¶ 11.)

Lastly, Morgan characterizes Count II as an attempt by Carran to "rescind the contract." (Def. Mot. 19.) Although somewhat unclear, Morgan appears to be arguing for dismissal of the Amended Complaint on the basis that Carran cannot proceed with a cause of action for rescission of contract. The Court concludes, based on the allegations, that Carran merely seeks rescission as a potential remedy, provided by statute, and not as a common law cause of action. Cf. Billian v. Mobil Corp., 710 So. 2d 984 (Fla. Dist. Ct. App. 1998) (discussion of the cause of action for rescission of contract).

Accordingly, the motion to dismiss count II is denied in all respects except as to the failure to allege the sale of a security in Florida. Carran is granted leave to amend to cure that defect if she can do so.

I.  Failure to Allege Properly an Intent to Charge a Particular Property with respect to the Lis Pendens

Morgan seeks dissolution of the lis pendens based on Carran's failure to establish an nexus between the ownership of the property and the instant dispute.[8]

With respect to a lis pendens, section 48.23(3) of Florida Statutes applies when a complaint does not allege that a claim is based on a recorded instrument. Under that provision, the Court may control and discharge a notice of lis pendens in the same manner that it may grant and dissolve injunctions. Fla. Stat. § 48.23(3). The Court, however, cannot dissolve a lis pendens if the proponent

---

[8] Carran does not challenge Morgan's contention that the lien sought does not rest on any allegation of a contract showing an intent by the parties to charge this particular property with a debt or obligation or any other agreement to support a recorded lien. (Def. Mot. 21-22.)

establishes a "fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit." Chiusolo v. Kennedy, 614 So. 2d 491, 492 (Fla. 1993). To make this determination, the court may conduct an evidentiary hearing. Id.

Here, the Amended Complaint states that Morgan failed to invest Carran's money as represented and instead converted those funds and invested them in his personal residence. (Am. Compl. ¶¶ 45-47.) Additional facts are needed to determine whether an equitable lien is appropriate and to determine the appropriate amount of any such lien. Thus, the Court concludes that an evidentiary hearing will be necessary.[9]

J. Attorney's Fees

The Court defers ruling on any request for attorney's fees until the conclusion of the litigation. At that time, the parties may submit a formal motion for attorney's fees that includes a memorandum of law and complies with Local Rules 7.1 and 7.3 of the Southern District of Florida.

---

[9] Morgan also insists that the Amended Complaint's failure to plead fraud with specificity is a ground for dissolution of the lis pendens. As discussed herein, Carran's fraud claim is properly pled.

III. Conclusion

It is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Morgan's Motion to Dismiss [DE 1] is **DENIED** in all respects except that the motion of Defendant Morgan, d/b/a Anglo Offshore Resources, to dismiss for insufficient service of process is denied without prejudice, and except that Count II is dismissed for failure to allege that the sale of securities was conducted in Florida. Plaintiff is granted leave to amend Count II of the Amended Complaint.

2) Defendant Morgan's Request for Expedited Hearing to Discharge Lis Pendens [DE 9] is **DENIED** based on his failure to respond to the Court's Order dated October 24, 2006.

3) Defendant Morgan's Motion to Dissolve the Lis Pendens is hereby **REFERRED TO MAGISTRATE JUDGE LINNEA R. JOHNSON** for the purpose of conducting an evidentiary hearing to provide the Court with a report and recommendation on the questions of whether an equitable lien is appropriate and if so the appropriate amount of any such lien.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of February 2007.

_____
KENNETH A. MARRA
United States District Judge

Copies to:
Magistrate Judge Linnea R. Johnson
All counsel of record